******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE N. Z. ET AL.[*]
# (AC 49206)

Alvord, Clark and Harper, Js.

*Syllabus*

The respondent mother appealed from the trial court's judgments terminating her parental rights with respect to her minor children and denying her motion for posttermination visitation. The mother claimed that the court, inter alia, improperly determined that the Department of Children and Families made reasonable efforts to reunify her with her children. *Held*:

The trial court's determination that the Department of Children and Families made reasonable efforts to reunify the respondent mother with her children was not clearly erroneous, as the court found that the department had consistently offered the mother services, placed her in therapeutic foster homes, and referred her to therapies and programming.

This court concluded that the trial court's determination that the respondent mother failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the children's ages and needs, she could assume a responsible position in their lives was supported by sufficient evidence, including evidence that the mother did not correct her untreated mental health issues, she had a pattern of engaging in relationships with intimate partner violence and she failed to meaningfully address concerns regarding her lack of parenting skills.

The trial court's determination that the termination of the respondent mother's parental rights was in the best interests of the children was not clearly erroneous, as the court considered the seven factors set forth in the statute (§ 17a-112 (k)) before making its determination, by clear and convincing evidence, as to the best interests of the children.

The trial court did not abuse its discretion in denying the respondent mother's motion for posttermination visitation, as the court properly determined that the mother failed to demonstrate that such visitation was necessary or appropriate.

Argued April 13—officially released July 6, 2026[**]

[*]In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

[**]July 6, 2026, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of Fairfield, Juvenile Matters, where the cases were tried to the court, *McLaughlin, J.*; judgments terminating the respondents' parental rights and denying the respondent mother's motion for posttermination visitation, from which the respondent mother appealed to this court. *Affirmed*.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent mother).

*Elizabeth Lewis*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

HARPER, J. The respondent mother,[1] J, appeals from the judgments of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her two children, N. Z. (N) and B. Z. (B). On appeal, the respondent claims that the court improperly (1) terminated her parental rights and (2) denied her motion for posttermination visitation. We affirm the judgments of the trial court.

The following factual summary is pertinent to our resolution of the issues on appeal. The respondent and C are the mother and father, respectively, of N and B. In April 2019, the then teenaged respondent, whose own involvement with the Department of Children and Families (department) began in 2008, gave birth to N. Approximately two months later, the department invoked a ninety-six hour hold on N. The petitioner subsequently obtained an order of temporary custody, and a

---

[1] The respondent father, C, consented to the termination of his parental rights, and is not participating in this appeal. Accordingly, all references to the respondent are to J only.

neglect petition was filed due to concerns regarding the respondent's untreated mental health issues,[2] intimate partner violence between the respondent and C, and a lack of parenting skills. In November 2019, the court adjudicated N to be neglected and ordered final specific steps for the respondent.[3]

B was born in June 2020, and, two days later, the department invoked a ninety-six hour hold on this child due to intimate partner violence between the respondent and C, the respondent's untreated mental health needs, and a lack of parenting skills. Approximately six months later, the court adjudicated B neglected and ordered final specific steps for the respondent.

On December 13, 2022, the court approved a permanency plan calling for the termination of the respondent's parental rights and adoption of N and B. On September 20, 2023, the petitioner filed petitions to terminate the respondent's parental rights. The termination of parental rights trial occurred on various days starting on November 25, 2024, and concluding on March 11, 2025. The court, *McLaughlin, J.*, issued a memorandum of decision on August 8, 2025, terminating the parental rights of the respondent as to N and B.

In the adjudicatory phase, the court concluded that the "clear and convincing evidence established that the department made reasonable efforts to reunify the [respondent] with the children and that the [respondent] was unable or unwilling to benefit from those efforts."[4]

---

[2]The court noted that the respondent has been diagnosed with attention deficit hyperactivity disorder, major depressive disorder, post-traumatic stress disorder, adjustment disorder, and anxiety. It further observed that she has a history of engaging in relationships involving domestic violence and intimate partner violence.

[3]At this time, the court also adjudicated the respondent neglected and committed her to the care and custody of the petitioner.

[4]When a trial court finds that the petitioner has proven both statutory elements of General Statutes § 17a-112 (j) (1), that is, that the department made reasonable efforts to locate the parent and reunify the parent with the child and that the parent is unable or unwilling to benefit from the reunification efforts, then the respondent must challenge both, otherwise the appeal is moot because either constitutes an

The court further concluded that the petitioner proved by clear and convincing evidence that the children had been adjudicated neglected and that the respondent "has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the life of the children pursuant to General Statutes § 17a-112 (j) (3) (B) (i)."

In the dispositional phase, the court, after considering the seven factors set forth in § 17a-112 (k), concluded that the "clear and convincing evidence established that it is in the best interests of the children to terminate the [respondent's] parental rights to permit them to be adopted." Finally, the court denied the respondent's motion for posttermination visitation with the children. It concluded that there was no credible evidence in the record that such visitation was necessary or appropriate to secure the welfare, protection, proper care, and suitable support of the children. This appeal followed.[5]

I

The respondent first claims that the court improperly terminated her parental rights as to N and B. Specifically, she argues that the court improperly determined that (1) the department made reasonable efforts to reunify her with her children, (2) she failed to rehabilitate within the meaning of § 17a-112, and (3) termination of her parental rights was in the best interests of the children. We are not persuaded.

"We begin with the applicable standard of review and general governing principles. Although the trial court's subordinate factual findings are reviewable only for clear

---

independent basis for affirming the judgment of the trial court. See *In re Elijah C.*, 326 Conn. 480, 493–94, 165 A.3d 1149 (2017); see also *In re Ricari B.*, 239 Conn. App. 111, 118–19, A.3d (2026). In this present case, the court found that the petitioner proved both statutory elements of § 17a-112 (j) (1). The respondent has challenged both findings on appeal; accordingly, the appeal is not moot.

[5]The attorney for the minor children filed a statement adopting the brief of the petitioner pursuant to Practice Book §§ 67-13 and 79a-6 (c).

error, the court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. . . . That conclusion is drawn from both the court's factual findings and its weighing of the facts in considering whether the statutory ground has been satisfied. . . . On review, we must determine whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . .

"Proceedings to terminate parental rights are governed by . . . § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. . . . .

"[I]n order to prevail on a petition for the termination of parental rights pursuant to § 17a-112 (j) (3) (B) (i), the petitioner must prove by clear and convincing evidence the department's reasonable efforts [regarding reunification] or the parent's inability or unwillingness to benefit therefrom, and that termination is in the best interest of the child. In addition, under . . . § 17a-112 (j) (3) (B) (i), the petitioner must prove by clear and convincing evidence that the child . . . has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . .

"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. . . . The best interest determination also must be supported by clear and convincing evidence." (Citation omitted; internal quotation marks omitted.) *In re Amanda L.*, 209 Conn. App. 1, 5–6, 267 A.3d 362 (2021); see also *In re Avia M.*, 188 Conn. App. 736, 738–39, 205 A.3d 764 (2019).

A

The respondent first argues that the court improperly determined that the department made reasonable efforts to reunify her with N and B. Specifically, the respondent contends that, due to a misunderstanding, a social worker mistakenly informed social and case workers, among others, that a psychologist did not recommend reunification until she reached a certain age. The respondent contends that, as a result of this error, the department did not provide her with the Reunification and Therapeutic Family Time service and the "failure to do so prevented her from continuing on the path toward reunification." The petitioner counters that "[o]verwhelming evidence" supports the court's findings that the department made reasonable efforts to reunify. We agree with the petitioner.

"[Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. . . . [R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . [O]ur courts are instructed to look to the totality of the facts and circumstances presented in each individual case in deciding

whether reasonable efforts have been made." (Citations omitted; internal quotation marks omitted.) *In re Ryder M.*, 211 Conn. App. 793, 810–11, 274 A.3d 218, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022); see also *In re Tianna M.-M.*, 233 Conn. App. 369, 376–77, 341 A.3d 368 (2025).

In its memorandum of decision, the court stated: "From the outset of this case up to the filing of the [termination petitions], the department consistently offered the [respondent] case management services, administrative case reviews, referrals to mental health services and parenting services. The department placed the [respondent] in several therapeutic foster homes. The department referred the [respondent] to [the Family and Children's Agency] for parenting and life skills. The department referred the [respondent] to [Therapeutic Family Time]. The department offered the [respondent] supervised visitation with the children. The department referred the children to Birth to Three Services and Child First services. The department referred the [respondent] to individual therapy, medication management and encouraged the [respondent] to complete [intensive outpatient treatment] in accordance with [a hospital's] recommendation. The department referred the [respondent] to [intimate partner violence] services. The department moved for a court-ordered psychological evaluation of the [respondent] and an interactional with the children to better identify the [respondent's] needs and appropriate services. The department referred the [respondent] to a job support program. The department did everything reasonable to reunify the [respondent] and the children."

We emphasize that the department must make reasonable efforts to reunify, not every possible effort. See *In re Austin C.*, 236 Conn. App. 11, 20–21, 347 A.3d 262 (2025); *In re Gabriella A.*, 154 Conn. App. 177, 182–83, 104 A.3d 805 (2014), aff'd, 319 Conn. 775, 127 A.3d 948 (2015). Given the efforts detailed by the court regarding the services offered to the respondent by the department over an extended period of time, we are not persuaded

by the respondent's claim that the department failed to make reasonable efforts to reunify with her children. We conclude, therefore, that the court's determination that the department made reasonable efforts to reunify the respondent with her children was not erroneous.[6]

B

The respondent next argues that the court improperly determined that she failed to rehabilitate within the meaning of § 17a-112. Specifically, she contends that the court made several erroneous factual findings in assessing her compliance with the specific steps that were ordered relating the department's concerns with her untreated mental health needs, her involvement in relationships that featured intimate partner and domestic violence, and her lack of parenting skills. The petitioner counters that, considering the entire record, the court properly found that the respondent had not corrected her untreated mental health issues and her pattern of

[6]The respondent also claims that the court improperly determined that she was unable or unwilling to benefit from reunification efforts under § 17a-112 (j) (1). As this court has noted: "Pursuant to § 17a-112 (j) (1), the petitioner must prove *either* that the department has made reasonable efforts to reunify *or, alternatively*, that the parent is unwilling or unable to benefit from reunification efforts. . . . Section 17a-112 (j) clearly provides that the petitioner is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Citation omitted; emphasis in original; internal quotation marks omitted.) *In re Ryder M.*, supra, 211 Conn. App. 808 n.7. Given our conclusion that the court properly determined that that the petitioner established, by clear and convincing evidence, that it made reasonable efforts to reunify the respondent with the children, we need not address the respondent's independent claim that the court improperly concluded that she was unable or unwilling to benefit from the reunification efforts.

Additionally, we need not address the respondent's constitutional challenge to General Statutes §§ 17a-111b (a) (2) and 117a-112 (j) to the extent that these statutes allow for a finding of reasonable efforts based on a court's prior approval of a permanency plan other than reunification by a mere preponderance of the evidence because the court properly found, on the basis of clear and convincing evidence, that the department made reasonable efforts to reunify the respondent with the children. See *In re Kyreese L.*, 220 Conn. App. 705, 714 n.6, 299 A.3d 296, cert. denied, 348 Conn. 901, 300 A.3d 1166 (2023).

engaging in relationships with intimate partner violence or meaningfully addressed the concerns regarding her parenting skills. We agree with the petitioner.

The failure of a parent to achieve sufficient personal rehabilitation is one of the statutory grounds on which a court may terminate parental rights pursuant to § 17a-112. See *In re Mikhail M.*, 230 Conn. App. 86, 88, 328 A.3d 758, cert. denied, 351 Conn. 907, 330 A.3d 132 (2025). "Concerning the failure to achieve personal rehabilitation, § 17a-112 (j) (3) (B) (i) provides for the termination of parental rights when the minor child has been found to have been neglected, abused or uncared for in a prior proceeding and the parent of such child has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." (Internal quotation marks omitted.) Id.; see also *In re Lil'Patrick T.*, 216 Conn. App. 240, 246–47, 284 A.3d 999, cert. denied, 345 Conn. 962, 285 A.3d 387 (2022).

"Personal rehabilitation as used in [§ 17a-112] refers to the restoration of a parent to [her] former constructive and useful role as a parent. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue. . . . An inquiry regarding personal rehabilitation requires us to obtain a historical perspective of the respondent's child-caring and parenting abilities. . . . Although the standard is not full rehabilitation, the parent must show more than any rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. . . . [E]ven if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements,

although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her children." (Citations omitted; internal quotation marks omitted.) *In re Zarirai S.*, 229 Conn. App. 239, 254–55, 326 A.3d 1148 (2024).

The respondent gave birth to N in April 2019. Shortly thereafter, the respondent had a physical altercation with her foster mother and subsequently left her second foster placement, leaving N behind. In December 2019, the respondent reunited with N in a third foster placement, but she left that placement, again without N, in March 2020, and she did not notify the department as to her whereabouts. She gave birth to B in June 2020.

The court acknowledged that, from June 2020 to early 2022, the respondent made some progress with respect to the specific steps ordered to address the concerns regarding her untreated mental health issues, her involvement in intimate partner and domestic violence, and her lack of parenting skills. "In 2022, the [respondent] stopped progressing in her steps and started to regress. The [respondent] assaulted a peer, stopped taking her mental health medication, stopped attending therapy, and became inconsistent with visiting the children. . . . [T]he [respondent's] ability to parent the children independently never materialized. The [respondent] never understood that her untreated mental health and desire to engage in dangerous intimate relationships was unsafe for her and the children." Additionally, the court noted that the respondent failed to complete any of the postsecondary education opportunities, including culinary and medical assistant programs at a community college, in which the department had enrolled her.

After considering the record in a manner most favorable to sustaining the judgment, we conclude that the evidence reasonably supports the court's ultimate determination that the respondent failed to rehabilitate within the meaning of § 17a-112 (j) (3) (E). See *In re Matthew W.*, 231 Conn. App. 21, 33–36, 331 A.3d 1239 (2025).

As the court observed, the respondent had "five years to make progress in stabilizing her mental health, understanding the impact of [intimate partner violence] and gaining necessary parenting skills. She has failed to do so. Further, the [respondent] shows no desire to progress. The children have been in the care of the department their entire lives. They are in need of a safe, stable and nurturing home to develop. The [respondent] cannot provide such a home."

In sum, we conclude that there is sufficient evidence to support the court's determination that the petitioner proved that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief, that within a reasonable time, considering the children's ages and needs, she could assume a responsible position in their lives. See, e.g., *In re Harmony Q.*, 171 Conn. App. 568, 574–75, 157 A.3d 137, cert. denied, 325 Conn. 915, 159 A.3d 232 (2017).

C

Next, the respondent argues that the court improperly determined that termination of her parental rights was in the best interests of the children. Specifically, she contends that the court failed to consider the foster parents' change from supporting an open adoption, as well as the children's heritage and specific needs. The petitioner counters that the court properly concluded, based on the clear and convincing evidence presented, that termination of the respondent's parental rights was in the best interests of the children. We agree with the petitioner.

"[A]n appellate tribunal will not disturb a trial court's finding that termination of parental rights is in a child's best interest unless that finding is clearly erroneous. . . . In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . In the dispositional phase . . . the trial court must determine whether it is established by clear and

convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § 17a-112 [k]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered." (Footnote omitted; internal quotation marks omitted.) *In re Autumn O.*, 218 Conn. App. 424, 442, 292 A.3d 66, cert. denied, 346 Conn. 1025, 294 A.3d 1026 (2023); see also *In re Christina C.*, 221 Conn. App. 185, 216–17, 300 A.3d 1188, cert. denied, 348 Conn. 907, 301 A.3d 1056 (2023).

In the present case, the court considered the seven factors set forth in § 17a-112 (k) before determining, by clear and convincing evidence, that the termination of the respondent's parental rights was in the best interests of the minor children. After a careful review of the record, including the court's memorandum of decision and the parties' appellate briefs, we conclude that the court's best interest finding is factually supported and legally sound; therefore, we will not disturb the judgment of the trial court. See *In re Gabriella C.-G.*, 186 Conn. App. 767, 769–70, 200 A.3d 1201 (2018), cert. denied, 330 Conn. 969, 200 A.3d 699 (2019). "Because there is ample supporting evidence in the record, and this court is not left with a definite and firm conviction that a mistake has been made . . . the court's finding that termination of the respondent's parental rights was in the best interest of the child is not clearly erroneous." (Citation omitted.) *In re Angelina M.*, 187 Conn. App. 801, 804, 203 A.3d 698 (2019). Accordingly, we conclude that the court's best interest determination was not clearly erroneous.

II

The respondent also claims that the court improperly denied her motion for posttermination visitation. Specifically, she argues that her presence in the lives of the children is necessary because of the "loving bond between them and . . . because of the seemingly wilful

cultural indifference of the foster parents." The petitioner counters that the court properly determined that the respondent failed to demonstrate that posttermination visitation was necessary or appropriate. We agree with the petitioner.

"[A] trial court has the authority to consider a motion for posttermination visitation when the court considers termination of parental rights pursuant to § 17a-112 (j) . . . . This authority . . . originates from the trial court's broad authority in juvenile matters, codified at [General Statutes] § 46b-121 (b) (1), to make and enforce such orders . . . necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child, including orders impacting parental rights, such as termination and visitation. . . . When evaluating whether posttermination visitation should be ordered, the mo[st] prudent approach . . . is to adhere to the standard that the legislature expressly adopted [in § 46b-121 (b) (1)]—necessary or appropriate to secure the welfare, protection, proper care and suitable support of [the] child . . . . The term necessary, when used in this context, has one fixed meaning: Impossible to be otherwise . . . indispensable; requisite; [or] essential. . . . In the context of posttermination visitation, we read the word appropriate to mean proper, given its placement after the more exacting term, necessary. . . . The court's necessary or appropriate standard is purposefully more stringent than the best interest of the child standard, as the trial court must find that posttermination visitation is necessary or appropriate—meaning proper—to secure the child's welfare. . . . It would be a rare circumstance in which a trial court could simultaneously terminate parental rights and, in the same proceeding, order posttermination visitation. . . .

"It is well settled that we review a trial court's exercise of authority under § 46b-121 (b) (1) for an abuse of discretion. . . . Whether . . . posttermination visitation [is necessary or appropriate] is, of course, a question of fact for the trial court, which has the parties before it and

is in the best position to analyze all of the factors which go into the ultimate conclusion that [posttermination visitation is in the best interest of the child] . . . . Our dedicated trial court judges, who adjudicate juvenile matters on a daily basis and must make decisions that concern children's welfare, protection, care and support, are best equipped to determine the factors worthy of consideration in making this finding. As examples—which are neither exclusive nor all-inclusive—a trial court may want to consider the child's wishes, the birth parent's expressed interest, the frequency and quality of visitation between the child and birth parent prior to the termination of the parent's parental rights, the strength of the emotional bond between the child and the birth parent, any interference with present custodial arrangements, and any impact on the adoption prospects for the child. . . .

"It is axiomatic that we review a trial court's factual determinations for clear error. . . . On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling. . . . On review for clear error, the mere existence in the record of evidence that would support a different conclusion, without more, is not sufficient to undermine the finding of the trial court." (Citations omitted; internal quotation marks omitted.) *In re L. T.*, 220 Conn. App. 680, 701–703, 299 A.3d 1229 (2023); see also *In re Annessa J.*, 343 Conn. 642, 667–71, 284 A.3d 562 (2022); *In re Nevaeh T.*, 239 Conn. App. 782, 793–94, A.3d (2026).

In the present case, the respondent contends that posttermination visitation is necessary because of the bond between her and the children and the "seemingly [wilful]

cultural indifference of the foster parents." The court found that there was no credible evidence that post-termination visitation was necessary or appropriate to secure the welfare, protection, proper care, and suitable support of the children. It described the relationship between the respondent and the children as "akin to a friend . . . [and not] parental in nature." Additionally, the court further explained that "[t]here is no credible evidence that not seeing the [respondent] will cause the children any long-term developmental delay or harm . . . . There is no evidence that continued visitation with the [respondent] posttermination is imperative to the children's development." Given these findings, and our limited standard of review, we cannot conclude that the court abused its discretion in denying the respondent's motion for posttermination visitation. See, e.g., *In re Nevaeh T.*, supra, 239 Conn. App. 793.

The judgments are affirmed.

In this opinion the other judges concurred.